Next case please. 10-1067-9158 Kirkland, Ellis, LLP Good morning, your honors. May it please the court and counsel, my name is Mitch Catton, along with Martin Washington and Joshua Diller. We're here this morning on behalf of the plaintiff appellant, Magnetek, Inc. This is a case that was resolved on a motion to dismiss for lack of subject matter jurisdiction. We respectfully ask that this court reverse the trial court's finding dismissing this case. During the course of my argument, I really want to touch on three main points. The first point is that the decision in this case is controlled by three U.S. Supreme Court cases, Merrill Dow, Grable, and Empire. Those cases are binding and control this result, and they collectively identify the Supreme Court's intent that a rising under jurisdiction is limited to a very narrow range of cases. And it is the exception, not the rule. And in fact, the second prong of the test, the federalism prong of the test, is designed to limit the number of state court cases, cases with state court causes of action that are moved into federal court. The cases that the defendant relies on from the federal circuit take an expansive view of a rising under jurisdiction and are inconsistent with the Supreme Court cases. Specifically with this case, our position is that the malpractice case does not arrive under federal law for two reasons. One, there is no substantial federal interest in having this matter heard in federal court. And we say that for a number of reasons. But most significantly, I believe, in a reason that separates this case from the Premier Networks case, is that before this state law legal malpractice action was filed, the 409 patent, the only patent at issue in the case, was held to be unenforceable. Secondly, the patent expired. Can we take a time out? Absolutely. Okay. Does that ruling which was made in that Osram case, is that binding forever and ever in this case? It is binding with respect to the question as to whether the patent is enforceable or unenforceable. Yes. It went up to the federal circuit. The federal circuit said that Mr. Nielsen engaged in inequitable conduct. He cannot enforce that patent. He found that he engaged in acts of lack of candor with the U.S. Patent Office. Nobody can enforce that patent. Is there any legal authority for that argument, counsel, in cases? It's the same legal authority of res judicata in any other case. So it's res judicata. It's not collateral estoppel. Yes. We're not claiming that in this case there can't be an argument that the result would have come out differently based on the facts of the case or based on the evidence. But what we are claiming is that that issue has been decided, that that is not an enforceable patent. It's part of the public domain. Anybody can use that idea. There's nothing that prevents someone from using it. And so that this case is not going to affect any actual patent rights. Let's talk about the timing of it, though, counsel. Sure. The timing of when the 409 decision came down in Osram. Sure. The district court of the Federal Circuit. Does that affect this case at all? It does not. No. It does not. And that's just an argument, but there's no cases to say one way or another if it does or does not. I don't know if there's a case that addresses that specifically, but I can tell you that at the time and I think the important question is to take a step back and look at what is the significant issue in hearing a legal malpractice case at the time it's filed. At the time the legal malpractice case was filed, the Federal Circuit had already affirmed the Federal Court's ruling that the 409 patent was unenforceable. The trial court's decision came out in 2006. The Federal Circuit's decision regarding the enforceability of the 409 patent came out in 2008. And, in fact, Mr. Nielsen had filed other actions to try to get that reconsidered and the Federal Circuit did not do that. The patent expired in 2007. So this case was filed in August of 2008. Let me ask you, practically, how would that kind of evidence, the evidence of the Osler rulings, get into evidence in the state court in the malpractice section? Well, I think this case would really be tried through experts like a number of other malpractice cases. If you have a neurosurgeon, you would have an expert testifying to the standards and would be able to explain the factual circumstances and render his opinion as to what the result would have been based on the facts in this case. I think we could also ask the court to take judicial notice of the decision in the Osler ruling. And, of course, experts would certainly argue about the significance of that ruling with respect to the malpractice claims in our case. And the difference of whether the state court would have to engage in construction versus application of Federal law? What would be your argument there? My argument would be they're really not going to have to do either. In the underlying case, infringement was admitted. It was admitted there was damages in the underlying case. In our well-put complaint, we don't take on the issue of infringement. We say that the malpractice occurred because of the failure of the defendant to properly raise and assert affirmative defenses that proved to be successful and dispositive in the Osler case. Counsel, let me ask you this. The fact that there was an agreement entered into in the arbitration portion whereby there was putting off of argument of equitable defenses and I forget the other balance of the scale there, but would that go into substantial issues of patent law that the state trial court would have to engage in? I don't believe so. I think I just don't see how that would be. What we're talking about for the most part, the affirmative defenses deal with issues of disclosure and candor to the U.S. Patent Office. Some of the issues that were raised that Mr. Nielsen paid the wrong amount for maintenance fees, he claimed his entity was a small entity and was entitled to lesser fees. He filed misleading affidavits where the people who signed the affidavits did not disclose their financial relationship to his company and those patents. So we believe that that fact that the patent had been found to be unenforceable, that it is unenforceable, that it expired, distinguishes us. Additionally, this case, whatever is decided, no matter who wins, is not going to have any impact on an actual patent. It will have no impact on patent law. It's certainly important to the parties, but it's not going to be controlling in any other case. Additionally, what the Supreme Court found significant in those cases finding federal jurisdiction is that it would concern a pure issue of federal law. We don't have that in this case. We have a fact-bound, situation-specific issue, and that's what the court identified in Empire. Counsel, can I ask you how the premier case, the Illinois case, figures into all this? Sure. I have two responses to that. One, I think it's distinguishable because premier involved an actual enforceable patent. And what happened in premier is that the patent holder brought suit in federal court for patent infringement and lost. He then brought a legal malpractice action in state court saying the reason he lost in federal court was because his attorney failed to present specific and certain scientific evidence, and that would have changed the result. The court found that that would involve substantial issues of patent law. In our case, we don't have an actual patent. We have infringement admitted. We don't have the need. We're not trying to present certain scientific evidence. And we know from the Federal Circuit that the patent is unenforceable. Additionally, my second point would be is I think premier networks got off on the wrong foot by looking at the wrong case, and I say that respectfully. And a lot of it could have been in the way the case was presented because premier networks looked at Christensen, which I would say is the least important of the Supreme Court cases because in Christensen there was no issue regarding federal jurisdiction. The case was there filed as an antitrust case, and the issue was what appellate court should hear the appeal from that case. And even though there were patent issues in that case, the Supreme Court in Christensen found they were not significant enough for the case to be heard by the Federal Circuit, and, in fact, the case should have been heard by the Seventh Circuit. But the case also, as far as why it's not substantial, the need to apply federal law on its own is not sufficient to create a rising underjurisdiction, and there is no federal cause of action for legal malpractice in a patent action. There are certainly federal causes of action related to patent infringement, but not for legal malpractice, and you have to look at Congress's intent. When we get to the next prong, and I think it's important to realize that the most important part of the test is the federalism part of the test. And the Court said that there's a veto, that even if it's a substantial issue of federal law, a case can't be moved into federal court if it would disrupt the division of state and federal judicial responsibilities. And here it's well established that the state's interest is compelling. And just taking a step back to Premier Networks, Premier Networks did not look at the federalism issue. And the reason the Premier Networks Court didn't look at the federalism issue is the parties focused their attention on Christensen, in which federal jurisdiction was admitted and was not disputed by the parties. If you look at the federalism issue, the state has a compelling interest in regulating attorneys in the practice of law. The Supreme Court of Illinois is uniquely responsible for regulating attorney conduct. The state has a significant interest in making sure that plaintiffs who are grieved from acts of malpractice have a remedy. There is no comparable federal interest. And we cite it to the same case where the Court pointed out that there's traditionally issues of attorney malpractice have been within the state. And federal courts have basically had their hands off and left state courts to deal with that. In this case, sure. So let me ask you about error measurement and immunosuppression. Sure. You argue that those cases don't apply here. I argue that, well, there's two lines of cases that I think it's important to look at. And I would argue that immunosuppression and error measurement fail to adhere to Grable, Empire, and Merrill Dow. And those are all Supreme Court cases. Those are all Supreme Court cases. And it errors because what the Federal Circuit did in error measurement and immunosuppression, it said because there is a case within the case and a plaintiff is relying on an approximate cause element to prove the malpractice, that but for the malpractice the result would have been different, that that states a substantial issue of federal law. And additionally, the Court blows by the federalism analysis and doesn't even consider the state's interest in hearing this type of case and what kind of disruption there would be between state and federal authorities. And I think it's important to look at the Grable case because Grable is a Supreme Court case. It's the only recent case to find a rising under jurisdiction, probably the only case in the last at least 50 years. And Grable is important because it shows the Supreme Court's intent to limit a rising under jurisdiction. And it even points out that it's going to be narrow, it's going to be limited, it's going to be an extremely special case that makes its way into federal court. And Grable concerned the IRS seizing property of Grable, selling it in a tax sale. Now, they gave him notice by way of certified mail. And the only issue in Grable concerned whether or not the notice complied with federal law. And here's what the Grable court found that I think is important for the reasons why they found that this case arised under federal law. First of all, the court said that the need to apply federal law on its own is insufficient. That's not going to do it. But they said it raises a substantial issue to federal law if the only, and here it was because the only contested issue went to the meaning of a federal statute, not simply the need to apply it but the meaning of it. And there the only question was whether or not certified mail complied with the statute or notice had to be by personal service. Additionally, they noted it was a pure issue of federal law. They also found that it was dispositive not only of this case but controlling in other cases. They noted that the IRS is of strong interest in the collection of taxes. It was a tax case. They found a substantial federal interest for the federal government to vindicate its own agency's administrative actions in federal court. And they saw the state court proceeding as a collateral attack on the agency's own action. They also noted you needed to provide clear notice. And then they said even after considering all these factors,  So if this would disrupt the division between state and federal judicial responsibilities. And they looked to the number of state law cases that would be moved into federal court. And it's really a disruption test almost. How many cases get moved into federal court if we move this case into federal court? And they found that it would be having a microscopic effect. And that's the term they used. That it would be the rare quiet title action that would be moved into federal court because it would raise a substantial federal issue. Merrill Dow doesn't look at the state's interest. I'm sorry. Immunosec and our measurement don't look at the state's interest. There's no discussion of the state's interest in hearing these cases. There's no discussion of the disruption effect, the number of cases that would be moved from state court into federal court. And here it's clear that a large number of cases that would be moved from state court to federal court because if you've seen after the premier network's decision, there's been a number of cases that have come out. Before 2007 the law was fairly established that a male practice case was going to be heard in state court. After the federal circuit came out with this case in 2007, we saw a lot of other district court cases that have come out. Counsel, can I ask you, are you familiar with Laboratory Corporation of America versus Metabolite? I believe so. Federal circuit? Yes. Yeah. 599 Fed Third 1277. I just wonder if you're familiar with that case and if you know how that affects what we might be considering. I'd have to make sure I was. Okay. All right. Fine. I know we've said a lot of cases in this case. There's a lot of cases that come out the other way. We settled three district court cases from 2010 that raised the point, and this is Genlink, ARC, and Rope Technical, that in those cases where a patent never issued they departed from the federal circuit and so the federal circuit failed to apply the Supreme Court test as enunciated in Merrill, Dow, Grable, and Empire. Can I ask you my final question? Sure. What do you think the effect of the supplemental authority, ARC and Genlink that was provided, how should that affect the case? I don't think it has any effect at all. If anything, it's mere dicta, and it shows that the federal district courts disagree with the federal circuit's pronouncement of a rising under jurisdiction, and it shows that they believe that the federal circuit are not adhering to the standards that the Supreme Court set forth in Merrill, Dow, Grable, and Empire. And in this case, there's really no basis to find a substantial federal issue because the patent is expired, because any decision in this case will not affect patent rights. Any question regarding the patent or federal issues are purely hypothetical questions. There are certainly hypothetical questions because it's malpractice, but even more so because there is no patent. There is no pure issue of federal law. Any issue in this case is going to be fact-bound, situation-specific. This case is not going to affect uniformity of the patent laws. The whole purpose of the patent laws has nothing to do with the malpractice action. Nothing in this will change or affect a patent or patent law. Importantly, and what the Supreme Courts have found, one thing to look at is whether there's a federal cause of action for the claim, and here there is no federal cause of action for legal malpractice, even in a patent matter. Had Congress wanted to, it could have been made a part of the 1338 jurisdiction. It did not. We said it to the Sink Court, which said it's the importance of the state issues with respect to malpractice, the Bennett v. Southwest case, and the number of cases that have come out have found, certainly federal jurisdiction courts have found, that the federal circuit has departed from what the Supreme Court has indicated in the Supreme Court cases. And then looking at the federalism part of this case, there is no compelling federal interest in the case where there's no patent. There is no pure issue of law. And moving this case to federal court moves a substantial number of cases with it into federal case and offends and upsets the principle of federalism. This is, and I'll wrap up, this is a case, you know, where there's two very different results in two different cases. If we're talking about uniformity in patent laws, then it's hard to see how we got there between the Osram and the Magnatek case. Two lines of cases have come down. The controlling line of cases from the Supreme Court and closely looking at Grable Empire and Merrill Dow show that the federal circuit has not adhered to the Supreme Court precedent. They can't be reconciled. And it's clear that those cases govern us. Even the federal circuit purports to give lip service to those cases. And we've cited Mitten v. Gunn, Roof Technical, Warrior Sports, where all those cases are patent cases, look to apply the federal circuit precedent and follow that as set at the federal circuit. Magnatek is just looking to have a day in court. We're in a procedural nightmare in that we're in federal and state court. Kirkland's contention is the case shouldn't be heard anywhere. This is a case that should be heard. This is a case that was litigated, timely, filed the day after a series of tolling agreements ended, filed after the federal court found that it would not vacate the arbitration award based on Nielsen's conduct because that conduct was a discoverable part of the arbitration. For all these reasons, unless you have any other questions, we would respectfully ask that you reverse the trial court's decision to allow Magnatek to proceed with this cause of action. Thank you. Thank you very much, Counsel. May it please the Court, my name is Diane Klotnia. I represent the Defendant Appali Kirkland and Ellis. Spell your last name, Counsel. K-L-O-T-N-I-A. Your Honors, Magnatek is asking this Court to ignore the clear language of Section 1338 to ignore the clear language of Christensen, which is the only Supreme Court authority cited. It deals with jurisdiction over patent claims, and to overrule this Court's decision in Premier Networks, which is equally clear and on point. The trial court properly dismissed, followed this authority in dismissing Magnatek's claim, and it should be affirmed. Magnatek argues about three other Supreme Court cases, Merrill Dow, Grable, and Empire. Respectfully, none of those cases deal with patent claims. Patent claims. Just because they're not patent claims, does that mean we can't look at the analysis? It has to do with the federal versus state issue, does it not? It does, Your Honor, but patents are different. As much as Magnatek would like to ignore that fact, patents are treated differently by Congress, and they're treated differently by the courts. Congress created exclusive federal jurisdiction under Section 1338 for patent claims. It didn't do it for all claims. It didn't do it for trademark claims, but it did grant exclusive jurisdiction for patent claims. Was there any case that would suggest that patent issues are considered different than IRS issues or whatever other federal issue comes up? They are considered different. And actually, even the case. Again, what cases do you have that will tell us that? Actually, even in the Singh case, which is the Fifth Circuit case on which Magnatek relies, it recognizes that patents are different. In the Singh case, the Fifth Circuit said, this is a trademark case, and so we're not going to find that it's exclusive federal jurisdiction. But if it had been a patent case, we may have ruled differently. Why is this a patent case? Because, Your Honor, you cannot avoid, under Illinois law, where there's a case within a case for malpractice, you cannot avoid deciding the underlying case. In this case, it's a patent case. But that's already been decided, hasn't it, in this other case? Would you just discount what the court did in that case? Say, gee, they must be wrong, so let's move on? Well, Osram is different, Your Honor. There are two reasons. One is Osram came long after the decision and long after the alleged negligence in the Magnatek case. And so Your Honors are to look to the facts and the laws that existed at the time of the alleged negligence, not what occurred afterwards, and Osram is a later decision. Secondly, Osram is different. Osram involved different facts. It involved 11 different patents that were at issue in that case, and only one of those patents is at issue in this case. That's the 409 patent. And it didn't involve the question of the invalidity defense, which counsel did not discuss earlier. The invalidity defense is essentially their claim that there was prior art or prior invention that rendered the 409 patent invalid. That issue has never been decided by any court, including the Osram court. The Osram court didn't touch that issue and wasn't asked to. So the Osram court doesn't control. Well, unenforceability versus invalidity, is there really a big distinction there, counsel? Excuse me? Unenforceability versus invalidity, is there a big distinction there? There is a big distinction, Your Honor. Unenforceability deals with whether or not there's been misconduct before the patent office. Oh, no, I know they have a different definition, but as far as the cases are concerned, have they been appreciated? Well, one is whether or not the patent – there is. The prior art, the invalidity defense, is going to look at the question of whether or not the patents, the 409 patent, is similar to or has been – if there's prior art or prior invention that preceded the 409 patent, so that the 409 patent should never have been issued in the first place, if the patent examiner had been aware of it. The unenforceability defense looks at inequal conduct before the patent office and whether there are either – there is misconduct in connection with the prosecution of the patent or in the maintenance of the patent that would render the patent that had been validly issued in the first place unenforceable, but not because of prior art. I understand, but the effect of those rulings, be it for invalidity or unenforceability, again, is there a distinction in the law as to how those apply as far as the validity of it? I mean, once it's enforceable or invalid. If a court were to find a patent is invalid, I think it would be the same if the court found the patent is unenforceable with respect to those parties. I think that's right. But as far as the Osram case in this case is concerned, Osram is quite different. And the issues that were decided in Osram are different from the issues that need to be decided with respect to the 409 patent. Well, not precisely. In this case, aren't the reasons, the precise reasons that they allege were the same and they're well pleaded, are the same that Osram decided? Not precisely, Your Honor. Osram was a very – Well, why not precisely? Well, Osram was a novel decision. It looked at not one patent, but it looked at a collection of problems. Well, so what? So what? That court already determined based upon the very same reasons that are in their – that exist in their complaint. No, Your Honor. And the trial court, looking at that, should have said, well, I've got what we have. Here's a malpractice case. It isn't a patent case. That's not correct, Your Honor. I think there's a misunderstanding.  It dealt with a collection of problems. And it recognized that for any one set of problems, it may not have been sufficient to render the patent unenforceable. It was the fact that there was a collection of problems over a series of other patents that were at issue in Osram that led to the conclusion. It addressed the 409 patent as part of a collection and a pattern of problems, but not the 409 – It did, but it did not find that the 409 patent, the issues relating to the 409 patent alone would have been sufficient to find that the patent was unenforceable. It did not find that. And, in fact, it found that it was the pattern across 11 patents that caused the court to conclude that there was inequitable conduct. And that is a distinction that's important. Secondly, it doesn't matter whether you're under Section 1338 or Christensen or the other law that's been cited whether the patent has lapsed, subsequently lapsed, for there to be a strong federal interest. There is a strong federal interest. Christensen said that, and I quote, that the courts have, sorry, that Section 1338 extends to, quote, those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of the substantial question of federal patent law and that patent law is a necessary element of one of the well-pleaded claims. Counsel, then that, so we don't have to consider Grable and Empire because they do not deal with patents. Is that your argument? Grable and Empire deal with different facts. Empire deals with facts that are unrelated to the underlying federal statute. So, again, that's your argument why we do not consider those U.S. Supreme Court cases, Grable and Empire, because they don't have to do with patents. I think that they're not as strong an authority as the Christensen case. So should we consider them at all? Well, I think that actually Empire is an interesting case. Empire deals with, finds that there's no federal jurisdiction because the fact issues that were at issue there were not related to the underlying federal statute. But didn't they say there was a substantial issue of patent law involved there? Not in Empire. In Grable. In Grable was a tax case, Your Honor. I mean of tax law. You're right, Counsel. And in Grable the court found that there was exclusive federal jurisdiction over that claim, over that state law claim. Because it was a substantial issue, right? That's correct, Your Honor. Okay. Continue. And the Federal Circuit has found in many cases, and the state courts have found as the majority line authority, is that where you have an underlying malpractice case that depends on resolving patent issues, that that case presents a substantial issue of federal patent law that means that the federal courts have exclusive jurisdiction and not the state courts. And that's what we have here. They cannot decide this case, this patent case, without deciding the substantial issues of federal patent law. And it is true. Whether the patent has since lapsed or not, the federal interest is still strong. There's a strong federal interest in uniformity of application of federal patent laws and in consolidating scientific and technical expertise in the Federal Circuit. That's what Congress has done here. Congress has decided that they will grant exclusive federal jurisdiction over patents and that one Federal Circuit Court, one court of appeals will decide those issues. And that is different from most every other area of law, and it's different from the other cases that the plaintiff cites in their brief. Counsel, may I ask you, are you familiar with Laboratory Corporation of America? And then I ask prior counsel to offer some tabloid. I apologize, Your Honor. I'm not familiar with that case. Continue. On the suggestion of Megatech's counsel that the Federal Circuit is, for want of a better word, a rogue circuit, that it's gone off and it's entered into these decisions and it's found exclusive federal jurisdiction where the Supreme Court has said there should be no jurisdiction, I'd point out to Your Honors that twice now the Supreme Court has had a And in both decisions, one came from the California State Court, which was the landmark, and one came from the Federal Circuit, which was Davis. In both of those cases, the malpractice was alleged negligence that prevented a patent from even being issued in the first instance. It was not a patent that had been issued in lapse. It had never even issued. In both cases, the court, both the California court and the Federal Circuit, found that there was exclusive federal jurisdiction over that malpractice claim. Both cases went up on petitions for cert were filed, and those petitions were denied. So the Supreme Court has had a chance to review this and say, hold on a second, you are out of control, Federal Circuit, and they didn't do so. And they didn't do so because patents are different. Patents are an exclusive area that Congress has expressed a strong, strong intention that there be uniformity and that there be one federal court that will decide these issues. The counsel has suggested that if this court, that the fact that the patent has lapsed means there will be no effect on any other patent, on the 409 patent of any decision made by this court. First, I'd say in malpractice cases generally, the fact that you have a decision in a malpractice case regarding any patent is unlikely to affect that patent at a later date. It's a case that looks at a hypothetical case within a case. And the courts have found that that's sufficient to warrant federal jurisdiction. But in any case, whether the patent has lapsed or not, the decision made in a state court case, a state court with jurisdiction over a case that has an underlying substantial issue of federal patent law, will have an effect beyond that case. It will affect the conduct that attorneys may engage in in prosecuting patents before the federal patent agency. It may affect inventor conduct in prosecuting patents. It may affect attorney conduct in litigating claims, patent claims that can only be litigated in federal court. So it's incorrect to say that the patent has lapsed and therefore there's no effect beyond this case. That's absolutely not true. And what happens if you have state courts that have jurisdiction over issues that require the court to resolve and consider patent law issues, patent law regulations, and patent rules? You have the possibility of 50 different states interpreting those rules, those patent rules and patent regulations. Fifty different states casting inappropriate conduct before a federal court or before a federal agency. What counsel may ask is they have counsel issues of construction versus application of patent law. Can the state court consider either one of them? Not in this case, Your Honor. They cannot. Well, at any time. I don't see how. It may depend on the claim. It may depend on the claim, but I don't think that when you have to prove that you would have prevailed in the underlying patent litigation. But if they don't have to prove that. Well, that's true. Actually, to address a point that counsel raises, they would suggest that if you rule in our favor, if you affirm the trial court, that that will sweep into the federal court every single representation that involves any patent issue. I think that's a fair summary of their quote, and that's not correct. There are actually malpractice cases I can envision where the state courts would continue to have jurisdiction, even though the representation involved patent issues. I'll give you an example. Suppose you have an inventor in a patent infringement claim in the underlying case, the patent case, and he wins. And he gets a judgment in his favor against the infringer. But the attorney fails to preserve that judgment and fails to collect on it. There would be a malpractice claim. That malpractice claim would arise out of patent representation or representation involving patent issues. But the court wouldn't have to resolve whether or not the inventor would have prevailed in the underlying litigation. We already know that he would have. So there would be no substantial issues of patent law. That case would stay here. Isn't that Kirkland v. CMI? Do you know that case? I'm not familiar with the other one. All right, continue. If you have 50 different states issuing rulings on federal patent laws, what they will lack is the uniformity that the federal circuit can bring to bear. And Congress has determined that the federal circuit should bring to bear to bring uniformity to the area of patent laws. I'd like to briefly address an issue that MAGTEC raises in its reply brief that it had not raised before, and that is what they say is a strong state interest in regulating the conduct of attorneys in Illinois. It's certainly true that the states have such an interest, but it's not correct that that interest is affected here. This is not a case about whether or not the states would have authority to regulate attorney conduct in disciplinary proceedings. This is a case about whether or not a claim brought by a former client should be brought in state court or federal court where the underlying law that must be addressed is federal patent law. Counsel, let me ask you this. What about the settlement agreement that was entered into during the arbitration? Does that have to do with federal law? Is federal law a tangential issue, whether or not they're going to proceed? They made an agreement during the arbitration, correct? Correct. So whether or not that was appropriate legal advice, that was good legal advice, is that a state issue or a federal issue? It's still a federal issue, Your Honor, because in order to prevail, MAGTEC would still have to show that they would have prevailed on the patent law claim. So they'd have to show not only that the advice was wrong, but if they had followed different advice that they would have won. And it's because of that that that makes this a federal case rather than a state case. Conclusion. Section 1338 in the Supreme Court decision in Christensen compelled this Court's ruling in Premier Networks. Premier Networks then and now is in line with the majority view on jurisdiction over patent law claims, over malpractice claims that are based on patents. Premier Networks compels the dismissal of the MAGTEC claim. The trial court got it right, and we ask this Court to affirm. Thank you. Thank you, counsel. Eduardo. Thank you. Kirkland's sole argument is the mere need to apply federal law for the proximate cause element of a malpractice claim moves this case into federal court without looking at anything else. It's simply not correct, and it's not correct with the Supreme Court precedent. Justice Connors asked before about if it's different because it's patent, and it's clear it's not. And I think we know that because it's the same test for rising under jurisdiction, that even in error measurement, the Court purported and tried to apply Merrill, Dow, Grable, and Empire. And there's numerous federal court cases that we've cited in our brief, Ruth Technical, Chen Link, that have looked at the Supreme Court cases, and we've cited Mitten v. Gunn in the appellate court from Texas, that looked at the Supreme Court cases and said, those are the ones that we have to follow, not the Federal Circuit, because the Federal Circuit is not complying with Supreme Court dictates. There is no reason to differentiate, and there's no basis to disregard Supreme Court precedent. I mean, they're in the unenviable position of having distinguished Supreme Court cases, and those are the cases that control an arising under jurisdiction. I just want to respond to a couple points that were made. One is there was a comment made by Kirkland that there was some time separation between the two results in the Osram case. In fact, the same attorney represented the same clients from 2005. Discovery was going on in both cases at the same time, and the trial in Osram was only six months after the Magnatech decision. I'd also want to point out to this Court an important case we cited on page 18 of our reply brief that I think goes to the question of patent law is different, and that's Dow Chemical v. Exxon. And in that case, the Federal Circuit, the 1998 case, found that a state court case could decide issues of patent law, including issues regarding inequitable conduct in the context of a state court tortious interference with contract claim. Now, whether there's different theories in a case, if there's one theory in which Magnatech can prevail upon that does not raise substantial issues of Federal law, it is entitled to prevail and have the case heard in state court. And if I didn't mention it before, Christensen was in Federal court because of the Federal antitrust issue, and there was no question about Federal jurisdiction, so the Christensen court did not have to look at the Federalism question. There are certainly cases that go both ways. We cited a lot of cases. Since error measurement came out, there's been a plethora of cases in Federal and state courts dealing with this issue, and a lot of those have come out after premier networks. Before premier networks, really there was New Tech and the Federal Circuit. But if you look at the cases that have come out recently, Roof Technical, Genlink, Arc from the District Court in Missouri, those cases follow the Supreme Court precedent. Those cases look at whether a claim is substantial or not. Those three cases, Genlink, Roof Technical, and Arc, have all found that where there is no patent, there cannot be a substantial question of patent law, that any case would be a case of question of fact, not a pure issue of law. In our case, any issue is an issue primarily of fact. It's not going to be a substantial or pure issue of law, and that's what it takes to find a substantial Federal interest in having a case heard in Federal court. Any decision in our case will not control any court. If you look at the factors set forth in Grable, and Grable is the perfect case to look at, there's no basis to find a substantial issue of Federal law, and there's no basis to find a Federal interest such that it makes sense or is appropriate to move this large swath of cases into Federal court. We appreciate your time, and we just added, if the court wanted us to address the laboratory case, I apologize, I don't know what it is. We'd be glad to do that. Thank you. Thank you. The matter will be taken under advisement.